**SIGMON FUEL COMPANY**

**v.**

**TENNESSEE VALLEY AUTHORITY.**

**Civ. No. 3-81-488.**

United States District Court, E. D. Tennessee, N. D.

Jan. 14, 1982.

William G. Cockrill, Knoxville, Tenn., for plaintiff.

Herbert S. Sanger, Jr., Gen. Counsel, James E. Cox, Assoc. Gen. Counsel, Robert C. Glinski, Edwin W. Small, Tennessee Valley Authority, Knoxville, Tenn., for defendant.

MEMORANDUM

ROBERT L. TAYLOR, District Judge.

This action arises from a coal purchase contract between defendant, Tennessee Valley Authority (TVA) and J. L. Thacker, Inc. Plaintiff Sigmon Fuel Co. (Sigmon) is Thacker's assignee of the proceeds of the contract. The case is before the court on cross-motions for summary judgment. The parties have filed stipulated exhibits, other exhibits, and supporting affidavits.

Under the terms of the contract, dated June 5, 1978, Thacker was to mine and ship coal to TVA from Kentucky. (Stip.Ex. 1) The contract also provided for reclamation of the mining site. (Stip.Ex. 1, D–6). The contract authorized TVA to withhold amounts from payments in escrow and reclamation accounts. (Stip.Ex. 1, B–11, E–25). The contractor however remained liable for any costs of reclamation in excess of the funds held in the accounts. (Stip.Ex. 1, E–25). Soon after the contract was executed, Thacker assigned its right to proceeds to Sigmon pursuant to the Assignment of Claims Act, 41 U.S.C. § 15 and 31 U.S.C. § 203. (Stip.Ex. 2).

Approximately a year and a half after the assignment, state and federal officials terminated Thacker's mining operations for reclamation violations. (Stip.Ex. 14). TVA suspended Thacker's right to make future deliveries on March 20, 1980. (Stip.Ex. 16). It withheld money due under invoices for the last coal delivered and terminated the contract on June 17, 1980. (Stip.Ex. 24). Sigmon had made advances to Thacker on February 29, 1980 and May 23, 1980, relying on invoices for coal previously shipped. (Stip.Exs. 12, 20).

In its motion for summary judgment, Sigmon asserts three theories on which it seeks to recover monies withheld in excess of the escrow and reclamation accounts. It asserts (1) that TVA is not authorized to set-off funds for reclamation, (2) that TVA is estopped to set-off against monies owed to Sigmon, and (3) that TVA has not been damaged by Thacker's failure to reclaim and therefore cannot withhold the costs. Sigmon's complaint also asserts that the reclamation work claimed by TVA is unnecessary and the cost unreasonable. TVA previously moved for summary judgment on the theory that Sigmon lacks standing to assert these theories. The Court denied TVA's motion initially but will now reconsider TVA's position in the context of each of Sigmon's theories.

The original contract clearly provides in its Disputes Clause that all controversies regarding performance aspects of the contract are to be resolved administratively. (Stip.Ex. 1, B–10). Sigmon admits that its fourth theory is presently being

adjudicated pursuant to the clause. Sigmon's first and third theories also relate directly to the respective rights of TVA and Thacker under the terms of the contract, to which Sigmon is not a party. These issues are also the subject of the dispute proceeding. (Small affidavit, Ex. 1). Sigmon as assignee has no enforceable rights in the performance aspect of the contract. *See, Produce Factors Corp. v. United States*, 467 F.2d 1343, 1348 (Ct.Cl.1972). The assignee stands in the shoes of his assignor as to these claims. *Hardin County Savings Bank v. United States*, 65 F.Supp. 1017, 1022 (Ct. Cl.1946). If an assignee is allowed to assert his claims in a federal district court while the contractor must first exhaust his contractual remedies under the Disputes Clause, there is a possibility of inconsistent results. The administrative dispute proceeding must therefore control Sigmon's remedies arising from the performance aspects of the contract. All of plaintiff's theories, therefore, with the exception of estoppel, must be decided in the administrative proceeding.

The Court finds, however, that Sigmon has standing to assert its claim of estoppel. This theory is not founded on rights derived from the original contract. Sigmon claims that TVA owed it a duty to inform it of Thacker's mining difficulties in order that Sigmon would not make further advances. Sigmon claims this duty by virtue of its own position as assignee.

> Generally, an equitable estoppel arises, when one by his acts, representations, or admissions, or by his silence when he ought to speak out, intentionally or through culpable negligence induces another to believe certain facts to exist and such other rightfully relies and acts on such belief, so that he will be prejudiced if the former is permitted to deny the existence of such facts.

31 C.J.S. *Estoppel* § 59 (1964). Plaintiffs have a heavy burden if they seek to assert an estoppel against the federal government. If estoppel can be found at all, Sigmon must prove the ordinary elements of estoppel plus some act of affirmative misconduct. *United States v. Ruby Co.*, 588 F.2d 697, 703 (9th Cir. 1978), *cert. denied*, 442 U.S. 917, 99 S.Ct. 2838, 61 L.Ed.2d 284 (1979); *see also Schweiker v. Hansen*, 450 U.S. 785, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981). Acting pursuant to its coal procurement contracts, TVA is an arm of the federal government and is performing governmental services. *TVA v. Mason Coal, Inc.*, 384 F.Supp. 1107, 1115 (E.D.Tenn.1974), *aff'd* 513 F.2d 632 (6th Cir. 1975).

Sigmon has failed to establish an estoppel in this case. Prior to the assignment to Sigmon, TVA had knowledge of only a few minor reclamation violations. (Stip.Ex. 3). These violations clearly did not make the assignment worthless as was the case in *Mercantile National Bank of Dallas v. United States*, 280 F.2d 832 (1962). In *Mercantile National Bank*, the plaintiff was an assignee of proceeds under a contract for the delivery of manganese ore from Mexico. The United States knew at the time of the assignment that a change in the rate of currency exchange made the collateral worthless. *Id.* Although TVA had notice of mining violation cessation orders prior to Sigmon's last two advances (Stip.Exs. 9–10), there is no proof that TVA made affirmative representations on which Sigmon could have relied in making advances. TVA's internal correspondence evidences TVA's desire to keep the contract in effect and allow Thacker to comply with government reclamation requirements, if possible. (Stip.Exs. 13–14, 18–19). The record shows that TVA had made no decision to terminate the contract until after Sigmon's last advance. (Stip.Exs. 21, 23, 24). Additionally, Sigmon has failed to establish that TVA intended Sigmon to act by concealing Thacker's mining violations. It therefore appears that Sigmon has neither alleged nor proven any acts of affirmative misconduct that would estop TVA from withholding the last payments under the contract. 588 F.2d at 703. Additionally, Sigmon has failed to establish the ordinary element of estoppel that TVA either intended Sigmon to act by its nondisclosure or was so guilty of culpable negligence as to be

equivalent to a constructive fraud. *See Rowe v. Chesapeake Mineral Co.*, 61 F.Supp. 773, 777 (E.D.Ky.1945), *aff'd* 156 F.2d 752 (6th Cir. 1946), *cert. denied*, 329 U.S. 776, 67 S.Ct. 190, 91 L.Ed. 667 (1946).

For the reasons stated, it is ORDERED that defendant's motion for summary judgment be, and the same hereby is, granted. It is further ORDERED that plaintiff's motion for summary judgment be, and the same hereby is, denied. It is further ORDERED that this case be, and the same hereby is, dismissed.

Order Accordingly.