875 F.2d 865
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
KENTUCKY CARBON CORPORATION, a West Virginia Corporation,
Plaintiff-Appellant,
v.
TENNESSEE VALLEY AUTHORITY, a Federal Corporation, Defendant-Appellee.
 No. 88-5708.
 United States Court of Appeals, Sixth Circuit.
 May 8, 1989.
 
 Before BOYCE F. MARTIN, Jr. and MILBURN, Circuit Judges, and JOHN D. HOLSCHUH,* District Judge.
 PER CURIAM.
 
 
 1
 Kentucky Carbon Corporation appeals the district court's judgment for the Tennessee Valley Authority in this breach of contract action. We affirm the judgment of the district court.
 
 
 2
 On June 26, 1985, Kentucky Carbon filed this action claiming contract price adjustments and interest for increased workmen's compensation payments allegedly attributable to its performance of a coal contract with the Tennessee Valley Authority. TVA subsequently filed a counterclaim for overpayments of workmen's compensation made to Kentucky Carbon under the contract.
 
 
 3
 Kentucky Carbon and TVA entered into the disputed contract for the sale and purchase of coal on August 25, 1978. Pursuant to the contract, Kentucky Carbon sold coal to TVA beginning on October 27, 1978 and ending in August 1984. The base price per ton of coal under the contract was $46.99; this base price was subject to adjustment in accordance with the terms of the contract. Kentucky Carbon relies upon Section C, paragraph h. 1, the change of law provision, as the basis for its price adjustment claim. This paragraph provides in relevant part:
 
 
 4
 In the event of enactment, amendment, or change in implementation after the date of this Agreement of Federal or state laws relating to ... workmen's compensation contributions, ... the Contractor [Kentucky Carbon] shall supply from its records information satisfactory to TVA showing the effect, if any, of these changes upon the cost per ton on furnishing the coal under this Contract.
 
 
 5
 By letter of May 27, 1983, Kentucky Carbon submitted to TVA a written request for price adjustment for workmen's compensation costs for the period July 1, 1981 through June 30, 1982. TVA rejected this May 1983 request for price adjustment for the period July 1, 1981 through December 31, 1981 on the ground that the request had not been made within 180 days after Kentucky Carbon received notice of the cost change. For the period January 1, 1982 through June 30, 1982, TVA partially rejected Kentucky Carbon's request for the price adjustment of $2.023 per ton (later adjusted to $1.004) and made payments increased by $0.458 per ton because the statutorily-mandated Kentucky manual insurance rate had increased by this amount.
 
 
 6
 Pursuant to Contract Supplement No. 96, TVA, by taking a credit against sums owed to Kentucky Carbon under the contract, ceased payment after June 30, 1982 of the adjustment of $0.458 per ton that had been allowed effective January 1, 1982. TVA removed this $0.458 increase because, as of July 1, 1982, the manual rate was below Kentucky Carbon's costs for workers' compensation at the base of the contract. TVA refused to pay the $1.004 per ton, which Kentucky Carbon had requested effective July 1, 1981, for the period July 1, 1982 to August 26, 1984, and also refused to pay an additional $1.546 per ton, which Kentucky Carbon had requested effective July 1, 1982, for the period July 1, 1982 to August 26, 1984.
 
 
 7
 Kentucky Carbon used several methods of paying its workers' compensation obligations during the course of the contract. From the beginning of the contract until June 30, 1981, Kentucky Carbon had a guaranteed cost workers' compensation policy with Old Republic Insurance Company. The premiums for the policy were computed using the manual rates approved by the Kentucky Commissioner of Insurance. From July 1, 1981 to June 30, 1982, Old Republic insured Kentucky Carbon using a retrospective rating plan for traumatic injuries and a guaranteed cost plan for black lung disease. The premium for traumatic injuries was a basic premium plus the projected traumatic losses that Kentucky Carbon was expected to incur during the policy period. Kentucky Carbon became self-insured for traumatic injuries and for black lung as of July 1, 1982. For traumatic injury claims under $300,000.00, Old Republic handled the claims and was reimbursed by Kentucky Carbon for the amounts paid. Kentucky Carbon additionally had an excess liability policy with Old Republic under which Old Republic would pay claims that exceeded $300,000.00. To provide for payment of black lung liabilities, Kentucky Carbon had an indemnity policy with Old Republic.
 
 
 8
 In August 1986, TVA moved for partial summary judgment on Kentucky Carbon's claims for interest made pursuant to the Prompt Payment Act, 31 U.S.C. Secs. 3901-3906. In a report and recommendation dated November 14, 1986, a magistrate found the Prompt Payment Act to be inapplicable to the 1978 contract between TVA and Kentucky Carbon because the Act applies only to contracts entered into after October 1982. The magistrate therefore recommended that summary judgment be granted. The district court adopted the magistrate's report and granted TVA's motion for partial summary judgment on the Prompt Payment Act claims in January 1987.
 
 
 9
 Kentucky Carbon's remaining claim for price adjustments and TVA's counterclaim for overpayments were tried in April 1987 before a magistrate sitting as a special master pursuant to Rule 53 of the Federal Rules of Civil Procedure. On February 18, 1988, the magistrate filed a report and recommendation in which he found that Kentucky Carbon had failed to prove its entitlement to any of the $609,603.34 claimed by it at trial and that TVA was entitled to recover on its counterclaim for overpayments in the amount of $85,505.83. More specifically, the magistrate concluded that Kentucky Carbon waived any claims to price adjustments for the period of July 1, 1981 to December 31, 1981 because it failed to report its cost changes within 180 days of receiving notice of the changes, as required by Section C, paragraph a of the contract, which provides in relevant part:
 
 
 10
 Any changes considered applicable by the Contractor (excluding c, d, e, f, g and i) shall be reported to TVA within 180 days of the date Contractor has notice of a cost change. Failure to submit a claim within such time period shall constitute a waiver of Contractor's right for such an adjustment.
 
 
 11
 The magistrate also found that Kentucky Carbon was not entitled to a price adjustment due to increased costs of workers' compensation because it failed to establish that its increased costs for workers' compensation were, as expressly required by the language of Section C, paragraph h. 1, caused by changes in the law or in implementation of the law. The magistrate additionally allowed TVA to recover on its counterclaim for overpayments arising out of Contract Supplement No. 88, issued in October 1983, which granted Kentucky Carbon a price increase for increased workmen's compensation costs due to changes in the United Mine Workers' Agreement. Kentucky Carbon certified in Supplement No. 88 that "the cost changes as stated have been and will continue to be incurred during the term of this contract or until further notice is given TVA." However, Kentucky Carbon's actual costs were lower than the costs that it submitted in support for this price increase; Kentucky Carbon moreover failed to give TVA notice of its reduced costs and refused to allow TVA to review records showing Kentucky Carbon's actual workers' compensation payments. The magistrate also concluded that the applicable six-year statute of limitations (28 U.S.C. Sec. 2415(a)) did not bar TVA's counterclaim.
 
 
 12
 In June 1988, the district court adopted the magistrate's report. Kentucky Carbon then appealed the district court's decision to this court.
 
 
 13
 On appeal, Kentucky Carbon makes four major arguments. First, Kentucky Carbon challenges the district court's decision denying the recovery of pre-judgment interest under the Prompt Payment Act claiming that, under 31 U.S.C. Sec. 3902(a), TVA is liable for pre-judgment interest for properties or services acquired by it from Kentucky Carbon after October 1982. We disagree with this contention. The Prompt Payment Act is inapplicable to contracts entered into prior to October 1982 and is therefore not applicable to the 1978 contract between TVA and Kentucky Carbon, even though TVA did acquire, pursuant to the contract, properties or services from Kentucky Carbon after 1982. Sigmon Fuel Co. v. Tennessee Valley Authority, 754 F.2d 162, 164 (6th Cir.1985): Final Issuance of OMB Circular A-125, 47 Fed.Reg. 37,322 (1982).
 
 
 14
 Second, Kentucky Carbon contends that it did not waive its right to price adjustments for the period from July 1, 1981 to December 31, 1981, even though it did not give TVA notice of its cost changes until May 1983, because the 180-day notice period provided for in Section C, paragraph a of the contract did not begin to run until March 1983 when Kentucky Carbon learned the "definitive" amount of its workmen's compensation cost increases. We cannot agree with this argument. The magistrate found that Kentucky Carbon was aware in mid-1981 that its workmen's compensation payments had drastically increased from $155,186.00 to $320,000.00 per month, but failed to report this increase to TVA until May 1983. The contract clearly provides that "any [cost] changes considered applicable" by Kentucky Carbon must be reported to TVA within the 180-day notice period and that "failure to submit a claim within such time period" constitutes a waiver of Kentucky Carbon's right to a price adjustment. Kentucky Carbon justifies its delay in notifying TVA of the cost changes on the ground that it did not learn the "definitive" amount of its cost changes until March 1983; the contract, however, does not on its face provide that only "definitive" or "final" cost changes are subject to the 180 day notice period. Kentucky Carbon, moreover, received and used several estimates of its revised costs for workmen's compensation prior to March 1983, and it apparently could have requested a tentative price adjustment based on these estimates. For these reasons, we decline to reverse the district court's conclusion that Kentucky Carbon waived its claim to price adjustments for the period from July 1, 1981 to December 31, 1981.
 
 
 15
 Third, Kentucky Carbon asserts that TVA violated applicable Uniform Commercial Code requirements of fair dealing and commercial reasonableness by requiring Kentucky Carbon to establish the precise monetary effect that changes in the law had on its workmen's compensation costs. More specifically, Kentucky Carbon argues that it is entitled to recover $609,603.34 in price adjustments because it fulfilled the requirements of Section C, paragraph h. 1 of the contract by introducing evidence showing federal and state statutes and regulations to be related to and having an effect on its cost of providing workmen's compensation. We disagree with this contention. Section c, paragraph h. 1 requires Kentucky Carbon to show "the effect, if any," of changes in federal or state laws relating to workmen's compensation upon the cost of furnishing coal. On its face, the contract requires TVA to grant price adjustments only for those cost increases that Kentucky Carbon can establish were caused by changes in the law. Kentucky Carbon asked the district court to take judicial notice of a number of laws and regulations but presented no evidence showing the effect of these changes upon Kentucky Carbon's costs. Given the lack of evidence in the record establishing a correlation between Kentucky Carbon's cost increases and changes in workmen's compensation laws, we do not believe the district court erred in concluding that Kentucky Carbon was not entitled to recover the amounts claimed.
 
 
 16
 Similarly, we reject Kentucky Carbon's assertion that TVA violated the Uniform Commercial Code standards of fair dealing and commercial reasonableness by requiring Kentucky Carbon, as provided for in the contract, to show the effect of changes in law on the cost of furnishing coal. Even assuming that the code standards of fair dealing and commercial reasonableness were applicable to Kentucky Carbon's contract with TVA, the magistrate specifically found that TVA did not act unreasonably or in less than good faith. Because Kentucky Carbon failed to show this finding to be clearly erroneous, we must uphold it.
 
 
 17
 Finally, Kentucky Carbon challenges the award of $85,505.83 to TVA on it counterclaim for overpayments. Kentucky Carbon asserts that TVA's counterclaim was barred by the Uniform Commercial Code four-year statute of limitations, which applies to the sale of goods. In addition, Kentucky Carbon argues that Contract Supplement No. 88, which TVA relies upon for its counterclaim, never became part of the contract because Kentucky Carbon accepted the supplement "without prejudice to our position and subject to reservation of all our rights."
 
 
 18
 This argument of Kentucky Carbon must also fail. A specific federal statute, 28 U.S.C. Sec. 2415(a), provides a six-year limitations period for all contract claims by the federal government; the four-year statute provided for in the Uniform Commercial Code is therefore not applicable to TVA's counterclaim. Stevens v. Tennessee Valley Authority, 712 F.2d 1047, 1050 (6th Cir.1983). Given that the six-year statute applies (if any statute of limitations applies[1] ) to TVA's counterclaim for overpayments, the counterclaim, which was filed in March 1987, cannot be barred whether the statutory period began to run in October 1983, as TVA contends, or in June 1981, as Kentucky Carbon asserts. We also decline to overturn the district court's award of $85,505.83 to TVA on its counterclaim. Kentucky Carbon expressly certified in Contract Supplement No. 88, which provi ed a price adjustment for increased workers' compensation costs under the United Mine Workers' Agreement, that the stated cost changes had been and would continue to be incurred by Kentucky Carbon during the term of the contract or until further notice was given to TVA. The magistrate specifically found, however, that Kentucky Carbon's actual costs were lower than the costs submitted to TVA for the price increase and that Kentucky Carbon never gave TVA notice of the reduced costs. Given these findings by the magistrate and the existence of similar certifications accepted by Kentucky Carbon without reservation in several other contract supplements, we are not convinced that Kentucky Carbon's general reservation to Supplement No. 88 was made with respect to or effectively overrode the express certification language contained in the supplement. We consequently uphold the district court's decision that Contract Supplement No. 88 entitled TVA to recover on its counterclaim for overpayments. Because the testimony of TVA's witness as to the computation of the amount of overpayment by TVA was not refuted by Kentucky Carbon, the award of $85,505.83 to TVA is also upheld.
 
 
 19
 For the foregoing reasons, the judgment of the district court denying Kentucky Carbon's claims for interest and for contract price adjustments and allowing TVA's counterclaim for overpayments is affirmed.
 
 
 
 *
 The Honorable John D. Holschuh, United States District Judge for the Southern District of Ohio, sitting by designation
 
 
 [1]
 TVA additionally argues that no statute of limitations can bar its counterclaim for overpayments because the counterclaim arises out of the contract upon which TVA is being sued by Kentucky Carbon. 28 U.S.C. Sec. 2415(f)